518

THE STATE OF OHIO, APPELLANT AND CROSS-APPELLEE, *v.* THOMAS, APPELLEE AND CROSS-APPELLANT.

(No. 80-1292—Decided June 24, 1981.)

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Jack H. Hudson,* for appellant and cross-appellee.

*Mr. Christopher D. Stanley,* for appellee and cross-appellant.

CLIFFORD F. BROWN, J. The sole issue raised by the state in its appeal to this court is whether the trial court committed reversible error by excluding testimony on the subject of the "battered wife syndrome" by an expert on battered wives, where defendant pleaded self-defense to killing her husband. We hold the common pleas court did not commit error in excluding such expert testimony. Therefore, we reverse the Court of Appeals, and affirm the conviction and sentence of defendant.

There are at least eight separate reasons to exclude this proffered expert testimony. See footnote 1, *supra.* Our conclusion would remain the same even if defendant's expert had personally interviewed defendant before being offered as a witness, even if defendant had conclusively established that defendant was, in fact, a battered wife, and even if defense counsel had propounded a hypothetical question to defendant's expert witness.

In a trial such as this one, where the evidence raises an issue of self-defense, the only admissible evidence pertaining to that defense is evidence which establishes that defendant had a bona-fide belief she was in imminent danger of death or great bodily harm, and that the only means of escape from such danger was through the use of deadly force.[2] *State* v. *Robbins* (1979), 58 Ohio St. 2d 74.

---

[2] The trial judge fully and correctly instructed the jury on self-defense as follows:

"To constitute self-defense, ladies and gentlemen, there must have been on the part of Kathy Thomas a careful use of her faculties and reasonable grounds to honestly believe that she was in an immediate danger to her person or to her life. There must have been a sufficient act by the deceased, Reuben Daniels, coupled with the apparent present ability to carry it out, to cause the Defendant, Kathy Thomas, to reasonably believe that the other party, that is Reuben Daniels, intended to kill her or do great bodily harm, and that the killing or shooting was necessary to save herself from death or great bodily harm.

"* * *

"In determining whether a Defendant such as Kathy Thomas had reasonable grounds for an honest belief that she was in imminent danger, you must put yourself in the position of the Defendant, Kathy Thomas, with her characteristics, with her feelings, with the disparity of size between Daniels and the defendant, Kathy Thomas, with her knowledge or lack of knowledge, and under the same circumstances and conditions that surrounded her at the time the act was done. You must consider also the

The jury is well able to understand and determine whether self-defense has been proven in a murder case without expert testimony such as that offered here. The jury will base its decision upon the material and relevant evidence concerning the participants' words and actions before, at, and following the murder, including defendant's explanation of the surrounding circumstances.

Also, such expert testimony is inadmissible because it is not distinctly related to some science, profession or occupation so as to be beyond the ken of the average lay person. Furthermore, no general acceptance of the expert's particular methodology has been established.[3] *McKay Machine Co.* v. *Rodman* (1967), 11 Ohio St. 2d 77; *Dyas* v. *United States* (App. D.C. 1977), 376 A. 2d 827, certiorari denied 434 U. S. 973; *Frye* v. *United States* (1923), 54 App. D.C. 46, 293 F. 1013. Finally, we believe the expert testimony offered here would tend to stereotype defendant, causing the jury to become prejudiced. It could decide the facts based on typical, and not the actual, facts.

Expert testimony on the "battered wife syndrome" by a psychiatric social worker to support defendant's claim of self-defense is inadmissible herein because (1) it is irrelevant and immaterial to the issue of whether defendant acted in self-defense at the time of the shooting; (2) the subject of the expert testimony is within the understanding of the jury; (3) the

conduct of Reuben Daniels and determine if his act or words or whatever you find in the evidence caused the Defendant to reasonably and honestly believe that she was about to be killed or to receive great bodily harm."

This full and fair instruction on self-defense prevented any error that could have occurred by the trial court's exclusion of expert testimony on the "battered wife syndrome."

[3] In support of her proffer of expert testimony about the "battered wife syndrome," defendant cites *Ibn-Tamas* v. *United States* (App. D.C. 1979), 407 A. 2d 626. There, the District of Columbia Court of Appeals reversed and remanded that case back to the trial court for further consideration of its prior ruling on the admissibility of expert opinion testimony about the "battered wife syndrome." However, in that case, defense counsel proffered an unequivocal expert opinion, based on personal counseling with the defendant, a showing that the defendant was a "classic case" of the battered wife and did in fact perceive herself to be in imminent danger at the time of the shooting. We lack this kind of evidence in the case *sub judice*. Moreover, even if the facts in *Ibn-Tamas, supra,* were similar to the case at bar, we reject its rationale and decline to follow it.

"battered wife syndrome" is not sufficiently developed, as a matter of commonly accepted scientific knowledge, to warrant testimony under the guise of expertise; and (4) its prejudicial impact outweighs its probative value.

There is one claimed error defendant raises as cross-appellant herein which deserves comment. She asserts denial of a fair trial because the trial court failed to instruct the jury concerning the lesser-included offense of voluntary manslaughter.

At the close of the evidence the trial judge informed counsel for both parties that he intended to instruct the jury on murder, voluntary manslaughter and self-defense. The defendant, however, objected to any instruction on voluntary manslaughter. That objection of defense counsel constitutes a waiver of the instruction and precludes consideration on appeal. Crim. R. 30; *State* v. *Williams* (1977), 51 Ohio St. 2d 112. Defendant now argues that the proposed instruction was improper based on a reading of *State* v. *Toth* (1977), 52 Ohio St. 2d 206. However, in a case decided nearly a full year before the challenged jury instruction, the Eighth District Court of Appeals in *State* v. *Muscatello* (1977), 57 Ohio App. 231, affirmed 55 Ohio St. 2d 201, held an instruction on voluntary manslaughter to be proper in an aggravated murder prosecution in which defendant elicited some evidence of the mitigating circumstance of extreme emotional stress. Given this prior decision, it is apparent that defense counsel in the instant case could have requested and framed an appropriate jury instruction on voluntary manslaughter if he had wanted it.

All the remaining propositions of law on other claimed errors advanced by defendant-cross-appellant are without merit.

For the foregoing reasons the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

W. Brown and Sweeney, JJ., concur.

Holmes, J., concurs in the syllabus and judgment.

Celebrezze, C. J., P. Brown and Locher, JJ., concur in the judgment.