THE STATE OF OHIO, APPELLEE, *v.* GARFIELD, APPELLANT.

(No. 1274—Decided
December 8, 1986.)

*Craig S. Albert,* prosecuting attorney, and *Mark B. Marein,* for appellee.
*Gerald S. Gold* and *John S. Pyle,* for appellant.

Cook, J. Samuel E. Garfield, appellant, and his family, which included his wife and two small children, resided in Chesterland, Ohio. Appellant was regularly employed by Picker X-Ray and on Saturdays at WDMT, a radio station in Geauga County. Mrs. Garfield was employed part-time Saturdays as a cashier at a Pick-N-Pay supermarket in Cleveland. As a result of the Garfields' employment, they needed a babysitter for their children frequently on Saturdays. Beginning in 1981, Theresa Skrinska, age thirteen, babysat with the Garfield children on Saturdays and occasionally during the week. In August 1984, Theresa told her parents that appellant and she had engaged in sexual activities at the Garfield home and at his office at the radio station in 1983.

In June 1985, appellant was indicted on one count of rape (R.C. 2907.02[A][2]), two counts of sexual battery (R.C. 2907.03[A]), and one count of contributing to the unruliness of a minor (former R.C. 2151.41. Cf. R.C. 2919.24). On August 22, 1985, the state dismissed the rape count pursuant to Crim. R. 48(A). The court submitted one of the sexual battery counts and the contributing count to the jury, dismissing the other sexual battery count at the end of the state's case.

Prior to trial, Theresa was examined at the state's request by Dr. Kathleen Quinn, a child psychiatrist. Appellant filed a motion *in limine* to prohibit all expert opinion testimony concerning Theresa's psychiatric condition. After a voir dire examination of Dr. Quinn, the court ruled she could testify in general terms as to whether the symptoms expressed in court by the victim and other witnesses were consistent with those of a sexually abused fifteen-year-old.

Also prior to trial, appellant filed a motion to dismiss the contributing to unruliness count because of vagueness and overbreadth of the statute. The court overruled the motion at the conclusion of the state's case.

After a jury trial, appellant was found guilty of the contributing to unruliness charge and not guilty of one of the sexual battery counts; the other sexual battery count having been dismissed by the trial court at the conclusion of the prosecution's case. Appellant was subsequently sentenced to the maximum term of six months and fined $1,000.

Appellant has appealed the judgment of the trial court and has filed the following six assignments of error:

"1. The trial court committed prejudicial error by permitting Dr. Quinn to testify.

"2. The trial court committed prejudicial error by overruling the appellant's motion to dismiss the complaint on constitutional grounds.

"3. The trial court committed prejudicial error by overruling the appellant's motions for acquittal because the evidence was insufficient to sustain a conviction.

"4. The trial court committed

prejudicial error by permitting the prosecutor to ask the appellant and his wife if other witnesses were lying.

"5. The trial court committed prejudicial error by permitting the prosecutor to offer extrinsic evidence of instances of bad conduct allegedly committed by a defense witness.

"6. The trial court abused its discretion and committed prejudicial error by imposing a maximum jail sentence and fine."

The assigned errors are without merit.

Appellant's first contention is that the trial court erred in permitting Dr. Quinn to testify. He argues that her testimony was immaterial, was on a subject within the understanding of the jurors, was based on psychiatric principles not generally accepted as reliable for the determination of guilt, and was more prejudicial than probative.

Dr. Quinn, a licensed child psychiatrist, testified on the dynamics of child abuse, explaining to the jury the psychological factors which would cause a child to submit to sexual activity with an adult despite the absence of force or physical coercion. She testified as to how a sexually abused child's feelings of trust, anxiety, guilt, secrecy, fear of losing friendship and entrapment are factors which could undermine a child's resistance to sexual encounters with an adult and explain why the child failed to disclose such encounters early on in the relationship. Dr. Quinn testified that these factors could operate to implicitly coerce Teri to engage in sexual activities with appellant.

Much of Dr. Quinn's testimony was based on the work of Dr. Rolland Summit, author of an article on child abuse, and her own clinical work and experience. Her testimony assisted the jury in evaluating the credibility of Teri, who did not disclose that she had sexual activity with appellant until more than a year and a half after it purportedly happened.

Evid. R. 702 provides:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Expert testimony is admissible at trial (1) where the evidence is relevant and material to the issue in the case, (2) where the subject of the expert testimony is not within the understanding of the jury, (3) where the theory relied upon by the expert is commonly accepted in the scientific community, and (4) its probative value outweighs its prejudicial impact. *State* v. *Thomas* (1981), 66 Ohio St. 2d 518, 20 O.O. 3d 424, 423 N.E. 2d 137.

In the instant cause, the credibility of Teri Skrinska was crucial to appellee's case; thus, Dr. Quinn's testimony was relevant and material. Her testimony explained how a child could be induced against her will, without physical coercion, by an adult whom she knew and trusted, to engage in sexual conduct and keep the relationship to herself for more than a year and one half. The interplay of the complex psychological factors involved in such conduct by a child is outside the general understanding of average jurors. Dr. Quinn's testimony was based on her own clinical work and experience and the work of other respected members of the scientific community. Her testimony's probative value outweighed its prejudicial impact.

We conclude the court did nor err in permitting Dr. Quinn to testify.

Appellant's second contention is that the court erred in overruling his motion to dismiss the count of the indictment charging him with contributing to the unruliness of a child because

former R.C. 2151.41 and R.C. 2151.022(C) are unconstitutionally vague in that they fail to define ascertainable standards of guilt. Former R.C. 2151.41 provided:

"No person shall abuse a child or aid, abet, induce, cause, encourage, or contribute to the dependency, neglect, unruliness, or delinquency of a child or a ward of the juvenile court, or act in a way tending to cause delinquency or unruliness in such child. No person shall aid, abet, induce, cause, or encourage a child or a ward of the court, committed to the custody of any person, department, public or private institution, to leave the custody of such person, department, public or private institution, without legal consent. Each day of such contribution to such dependency, neglect, unruliness, or delinquency is a separate offense."

R.C. 2151.022 provides:

"As used in sections 2151.01 to 2151.54, inclusive, of the Revised Code, 'Unruly child' includes any child:
" * * *
"(C) Who so deports himself as to injure or endanger the health or morals of himself or others[.]"

The test in determining whether a statute is unconstitutionally vague is whether the language of the statute conveys sufficiently definite warnings as to the proscribed conduct when measured by common understanding and practices. *Connally* v. *General Constr. Co.* (1926), 269 U.S. 385.

We conclude the language of former R.C. 2151.41 and of R.C. 2151.022 (C) conveys sufficiently definite warnings as to the proscribed conduct when measured by common understanding and practices.

Appellant next contends the court erred in overruling his motion for acquittal at the close of the state's case because the evidence was insufficient to sustain a conviction.

As to sufficiency of evidence, a re- viewing court " * * * is limited to an examination of the record at the trial to determine whether evidence was presented, 'which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *Atkins* v. *State* (1926), 115 Ohio St. 542, 546 [155 N.E. 189, 190].' " *State* v. *Graven* (1978), 54 Ohio St. 2d 114, 117, 8 O.O. 3d 113, 115, 374 N.E. 2d 1370, 1372. See, also, *State* v. *Stewart* (1964), 176 Ohio St. 156, 27 O.O. 2d 42, 198 N.E. 2d 439; *State* v. *Sheppard* (1956), 165 Ohio St. 293, 59 O.O. 398, 135 N.E. 2d 340.

As indicated earlier, the statutory definition of an "unruly child" includes any child "[w]ho so deports himself as to injure or endanger the health or morals of himself or others." The evidence in the instant cause was sufficient to clearly indicate that Teri was an "unruly child" within the definition set forth in R.C. 2151.022(C) and that appellant contributed to her unruliness.

We conclude the court did not err in overruling appellant's motion for acquittal.

In his fourth assignment of error, appellant contends the court erred in permitting appellee, on cross-examination of his wife, to ask her if other witnesses were lying. He argues that the prosecutor's questions were irrelevant, immaterial and derogatory to him.

In our system of jurisprudence, wide latitude is allowed on cross-examination of a witness. Cross-examination is invaluable because it is a method of testing the accuracy, truthfulness and credibility of testimony. The limits to which a witness may be cross-examined rest in the sound discretion of the trial judge and this should not be interfered with unless the court abuses its discretion to the prejudice of the party complaining. *State* v. *Huffman* (1912), 86 Ohio St. 229, 99 N.E. 295.

In the instant cause, the trial court did not abuse its discretion in permitting the prosecutor to ask appellant's wife if Teri and other prosecution witnesses were lying.

Next, appellant contends that the court erred in permitting the prosecutor to ask appellant's wife if she had recently given "the finger" to Teri's younger sister and, upon her denial of having done so, permitting Teri's younger sister to testify that Mrs. Garfield had done so. Appellant argues Evid. R. 608(B) expressly prohibits the admission of extrinsic evidence to prove instances of a witness' bad conduct.

Evid. R. 608(B) provides:

"Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."

The state, in its brief, concedes that the trial court erred in permitting introduction of the testimony of Teri's sister that Mrs. Garfield had, in fact, given "the finger" to her. However, appellee argues that said error did not prejudice appellant since it had no bearing on the outcome of the case.

The state further argues that Mrs. Garfield's testimony added little, if anything, to her husband's defense since she admitted that she was not home on Saturdays or at the WDMT radio station when appellant and Teri allegedly had sexual encounters. Therefore, attacking her credibility in this manner did nothing to affect the jury's ultimate decision of whether to believe Teri's allegations or appellant's denials, according to the state.

In ruling on this assignment of error, this court must determine whether the trial court's error in permitting the extrinsic evidence in violation of Evid. R. 608(B) prejudiced appellant's right to a fair trial or was harmless beyond a reasonable doubt. *State* v. *Abrams* (1974), 39 Ohio St. 2d 53, 68 O.O. 2d 30, 313 N.E. 2d 823. Since Mrs. Garfield's testimony did not bear on facts of consequence to the prosecution or defense of appellant, we conclude the admission of said extrinsic evidence to attack her credibility was harmless error beyond a reasonable doubt.

Last, appellant contends the court abused its discretion in imposing the maximum fine and jail sentence because the court disregarded the criteria set forth in R.C. 2929.22, 2929.12 and 2951.02. He argues that he should have been placed on probation.

Generally, an appellate court will not reverse a trial court's exercise of discretion in sentencing as long as the sentence is within the statutory limits. *Toledo* v. *Reasonover* (1969), 5 Ohio St. 2d 22, 34 O.O. 2d 13, 213 N.E. 2d 179. However, the trial court must consider the factors enumerated in R.C. 2929.22 when imposing sentence for a misdemeanor, as in the instant cause. Failure to do so constitutes an abuse of discretion. *Cincinnati* v. *Clardy* (1978), 57 Ohio App. 2d 153, 11 O.O. 3d 137, 385 N.E. 2d 1342. R.C. 2929.12 does not apply to sentencing appellant since it pertains to sentencing for felonies.

In the instant cause, the sentence was within the statutory limits. Appellant did not request probation so R.C. 2951.02 did not apply. Nothing in the record indicates the court failed to consider the factors outlined in R.C. 2929.22.

The sentence was not clearly inappropriate to the seriousness of the offense and we cannot say, with a silent record before us, that the trial court did not consider all the required sentencing factors. See *State* v. *Cole* (1982), 8 Ohio App. 3d 416, 8 OBR 539, 457 N.E. 2d 873.

We conclude the court did not err in sentencing appellant.

*Judgment affirmed.*

DAHLING, P.J., concurs.

FORD, J., concurs in part and dissents in part.

FORD, J., concurring in part and dissenting in part. I concur with the majority with the exception of its analysis of appellant's fifth assignment of error.

It is fundamental in the law of evidence that any witness may be asked questions on cross-examination that are intended to expose that witness' bias, prejudice, or interest in the case against the adverse party, or another principal witness for the opposing side. The appellant, the state, and the majority ignore this basic ground for the propriety of the trial court's action permitting the questions asked by the state of the appellant's wife concerning her alleged displays of enmity toward the prosecutrix and members of her family, and the testimony in response to that line of questioning, as well as the rebuttal by the appellee on this subject.

In criminal cases it is basic that great latitude is allowed on cross-examination in order to test the credibility of a witness, and to demonstrate facts which tend to establish bias or prejudice, or any other motive the witness may have for giving his testimony. Evid. R. 607. "Because of the importance of evidence of bias or interest, inquiry into the area is never collateral, and a witness' denial of the facts constituting bias or interest may be rebutted with extrinsic evidence." *United States* v. *Frankenthal* (C.A. 7, 1978), 582 F. 2d 1102, 1106.

"The fairness of a witness may be shown by cross-examination. Inquiries into the feeling or disposition of the witness to conceal or pervert the truth are not to be excluded as being collateral. Accordingly, the interest of a witness in the result of the case may be shown by cross-examination.

"A witness may also be cross-examined as to his feelings toward the parties to the suit, as affecting his credibility. It is therefore competent to show by cross-examination the witness' bias and prejudice against the cross-examining party and in favor of the party who called him as a witness. The witness may, accordingly, be cross-examined as to any expressions or acts tending to show a bias for or against either of the parties. Personal ill will on the part of a witness is evidence of bias, and it is competent to elicit the fact on cross-examination." (Footnotes omitted.) 44 Ohio Jurisprudence 3d (1983) 297-298, Evidence and Witnesses, Section 902.

Appellant and appellee both misapply Evid. R. 608(B) to the foregoing appropriate ground of inquiry. It is to be read and applied to evidence of character and conduct of a witness as stated in Evid. R. 608(A), and not to standard areas of cross-examination as to bias, prejudice, and interest.

The rationale underlying Evid. R. 608(B) is to work as a check on proof of character when offered for impeachment purposes, and is obviously thus governed by Evid. R. 608 and 609.

The specific conduct limitation in Evid. R. 608(B) is there to guard against prejudicial abuse primarily in cross-examination of character witnesses, and not witnesses in general. The

triggering of this provision obtains in the following circumstances.

Generally, it is elementary that the state may not introduce evidence of a defendant's character. When a defendant places his reputation in issue by the introduction of character witnesses, he opens the avenue for the prosecution to test the credibility of such witnesses by making inquiry on cross-examination regarding whether the witness had knowledge of specific facts which, if they were really generally known, could have a distinct propensity to detract from the summary of reputation testified to by a character witness or witnesses, if such witness indicated he was not aware of them. *Gross* v. *United States* (C.A. 8, 1968), 394 F. 2d 216, 219.

This exercise of the right to test the credibility of character witnesses by such means is fraught with great potential prejudice.

The Supreme Court of the United States elaborated on this problem in *Michelson* v. *United States* (1948), 335 U.S. 469, and suggested some of the curative steps that should be exercised, and in part underlie Evid. R. 608(B). The court stated, at 480-481:

"Wide discretion is accompanied by heavy responsibility on trial courts to protect the practice from any misuse. The trial judge was scrupulous to so guard it in the case before us. He took pains to ascertain, out of presence of the jury, that the target of the question was an actual event, which would probably result in some comment among acquaintances if not injury to defendant's reputation. He satisfied himself that counsel was not merely taking a random shot at a reputation imprudently exposed or asking a groundless question to waft an unwarranted innuendo into the jury box."

Also, where a defendant's character witness has been cross-examined as to whether the witness had knowledge of specific facts which, if generally known, would have the result of detracting from the character testimony, the jury should be cautioned that the testimony has reference solely to reputation and not to the truth of collateral facts. *Gross* v. *United States, supra.*

Again, the purpose of Evid. R. 608(B) is to guard against the danger lurking in the impeachment of character witnesses where, in order to frame an intelligible question, the examiner's interrogatory frequently provides details of specific misconduct affecting general reputation which would not otherwise be admissible. *Shimon* v. *United States* (C.A.D.C. 1965), 352 F. 2d 449.

Consequently, Evid. R. 608(B) is to be applied to that limited area of the law, and is not to be used to emasculate other legitimate areas of cross-examination involving impeachment for bias.

Further, even if the issue in this case on this subject were solely the impeachment of a character witness, the line of questioning developed with this witness was consonant with Evid. R. 608(B)(1). Nothing in the record before this court manifests an abuse of discretion on the part of the trial court concerning legitimate impeachment of the witness' character for truthfulness, albeit on a seemingly peripheral matter.

I conclude that there is no need for an excursion in harmless error.