The STATE of Ohio, Appellee,

v.

ROQUEMORE, Appellant.

[Cite as *State v. Roquemore* (1993), 85 Ohio App.3d 448.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–356.

Decided March 16, 1993.

*Michael Miller*, Franklin County Prosecuting Attorney, and *Susan E. Day*, Assistant Prosecuting Attorney, for appellee.

*Philip T. Churchill,* Franklin County Public Defender, and *David L. Strait,* Assistant Public Defender, for appellant.

---

WHITESIDE, Judge.

Defendant-appellant, Dennis Roquemore, appeals from his convictions in the Franklin County Court of Common Pleas of two counts of rape and one count of involuntary manslaughter. Defendant raises five assignments of error as follows:

"1. The trial court committed reversible error and deprived appellant of due process of law by permitting introduction of inadmissible opinion testimony by a criminal 'profilist.'

"2. The trial court committed reversible error by overruling a defense motion to dismiss where trial did not commence within the time provided by R.C. 2945.71, et seq.

"3. The trial court committed reversible error and deprive [*sic*] appellant of due process of law by entering judgment of conviction which was not supported by sufficient credible evidence.

"4. The trial court erred by permitting the introduction of irrelevant and unfairly prejudicial testimony.

"5. The trial court erred in refusing jury instructions which were requested in a timely manner and which were pertinent to the determination of the issues before the jury."

On October 29, 1990, defendant was indicted by the Franklin County Grand Jury on two counts of rape, violations of R.C. 2907.02, and one count of involuntary manslaughter, a violation of R.C. 2903.04. The case was set for trial on March 2, 1992 in the Franklin County Court of Common Pleas. Defense counsel made a motion to dismiss the indictment on the grounds that defendant's statutory rights to a speedy trial had been violated. The motion was overruled. The trial then began. A videotape of defendant's statement to the police was shown to the jury and the defendant also testified on his own behalf.

Defendant stated that he had known the victim, Yvonne Mathis, for approximately ten years and they had lived together for the last year. On September 1, 1990, defendant and the victim visited a friend's house. They drank beer and socialized. Close to 1:00 a.m. on September 2, 1990, the men went to purchase more beer. When the men returned they decided to "play a practical joke" on the women by not letting the women know they were back. When the women eventually found the men, Yvonne seemed upset. The friend testified that Yvonne was also upset about a comment made involving sex and a French poodle.

After drinking more beer, the defendant and victim left and returned home in the early hours of the morning.

Defendant testified that the victim was "snappy and mean and stuff" on the way home and when they arrived. He tried to dispel her angry mood and cheer her up. The two went to bed. After watching some television, he decided to get the victim's attention by hitting the headboard with a baseball bat. He then tried to caress Yvonne but she pulled away. They continued talking and they tore each other's underwear off. They began wrestling and she started scratching him and he laid on top of her chest until she stopped. She apologized, and then they began intercourse.

Afterwards, defendant noticed that something was wrong with Yvonne. She seemed to be unconscious. He attempted to revive her and then carried her into the bathroom and placed her in the bathtub to run water over her. He began to panic and left the house. He drove to Bexley to an ex-girlfriend's house but she did not answer the door. He then telephoned the ex-girlfriend and told her something was wrong with Yvonne. He testified that she called 911 on her three-way line but the squad went to the wrong house. Defendant then drove to Alum Creek Reservoir and tried to drown himself but could not. Defendant returned to the house and called 911.

The defendant testified that the victim was a willing participant and was breathing when the sex began. He admitted that the sex was rough but they had rough sex in the past. He denied that the act was rape. The defense contends that a rape did not occur; therefore, he also cannot be found guilty of involuntary manslaughter which requires that the death occurred as the result of commission of a felony.

The coroner testified that the cause of death was:

" * * * [R]elated to the rectal and vaginal trauma that she had suffered and subsequent, due to pain, emotional disability from this abnormality, that she had sudden cardiac stoppage on the basis of a neurogenic response to the trauma that she suffered and this caused her heart to stop beating and she subsequently expired because it did not start beating again." [1]

This cause of death is derived by ruling out all the other possibilities. It is a rare occurrence. The coroner also testified that if the nerve response had not occurred, the injuries received by the victim would not have caused death.

---

1. This neurogenic response is called a "vasovagal response." Because of an impact on the body, the bilateral nerves (vagus nerves) which go to the heart discharge at the same time which causes cardiac stoppage.

■ By his first assignment of error, defendant contends that the trial court erred by permitting inadmissible opinion testimony by a criminal "profilist" and thereby denied him due process of law. The prosecution's expert witness testified about a crime scene assessment he had conducted by looking at the crime scene photos, police reports and the pathological report. On voir dire, the witness concluded that this crime scene fell " * * * into patterns of known violent behavior * * *" that he had studied in the past. The purpose of the testimony was not to identify the perpetrator nor to determine the cause of death, but rather to " * * * render an opinion given the crime assessment." [2] When asked if he was to give an opinion as to whether a rape had occurred, the witness answered "yes." [3] The prosecution argued that this testimony was necessary to rebut the defense argument that a rape did not occur. The prosecution maintained that the crime scene indicated many instances of violence and the violence had a definite pattern. Since the witness did not testify as to any conduct of defendant, the prosecution argues that this testimony should be admissible to indicate that the events of the evening fall into known patterns of violent behavior.

The defendant argues that this testimony was improper because it violated various rules of evidence. Evid.R. 402 provides:

"All relevant evidence is admissible, except as otherwise provided * * * by these rules, or by other rules prescribed by the Supreme Court of Ohio. Evidence which is not relevant is not admissible."

This rule provides that all relevant evidence is admissible unless excluded by the evidence rules. Evid.R. 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The witness's testimony appears to be relevant, since it indicates a pattern of violence and makes the determination that a rape occurred more probable than without the evidence. However, even though the evidence may be relevant, it must be excluded, since it conflicts with other evidence rules which provide that it

---

**2.** The use of "drug courier profiles" has been accepted to initiate further investigation but does not alone provide reasonable suspicion to justify an investigative stop. See *State v. McFarland* (Oct. 4, 1983), Franklin App. No. 82AP–683, unreported, 1983 WL 3717; *State v. Hassey* (1983), 9 Ohio App.3d 231, 9 OBR 403, 459 N.E.2d 573. These drug courier profiles have not been used to determine guilt or innocence but to aid in identification and provide a part of the justification for reasonable suspicion justifying further investigation.

**3.** The witness also answered "yes" when asked if he was to render an opinion as to the probability of whether or not a rape was committed.

must be excluded. For example, excludable hearsay is inadmissible because it is relevant but unreliable.

Evid.R. 702 provides that an expert may testify about scientific, technical, or other specialized knowledge if the witness is qualified as an expert, and the testimony will assist the trier of fact. This rule provides:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

This rule establishes the requirement that expert testimony is admissible only if it will assist the trier of fact. This means that the expert testimony must have both a sufficient scientific basis and a sufficient factual foundation in the record that it can reasonably be relied upon.

The witness testified as a "profilist." He described "profiling" as:

" * * * basically a method of examination which looks at the issue of motive. It ties to crime assessment, which basically examines the evidence set forth or the evidence known, which may include the photographs, the autopsy reports, the police reports, available information, and then one analyzes that based on probability for pattern in terms of development. Is there a sequence, is there an order, is that consistent with what has generally been established as recognized patterns in crime behavior?

"From that crime behavior then and that assessment, then one, again using probability, looks at the issues of the type of person and/or situation of which the crime was committed. * * * "

A part of this "profiling" review is the "crime scene assessment," which is the review that was employed here. "Crime scene assessment" involves a review of:

" * * * the police reports, the pathological findings, the medical examiner's report, and anything else that would have been supplied to all parties * * *."

The "crime scene assessment" then involves an analysis of whether the crime scene falls into patterns of "known" violent behavior that the witness claims to have studied in the past and, if so, identifying and labelling such behavior in an attempt better to understand and interpret the crime scene evidence.

Although the witness stated that the assessment is probability based, he does not keep files on all the cases he reviews (only approximately twenty-five percent of them), nor does he keep statistics about them. He stated that he used statistics from other sources, including the FBI, but there is no indication as to how he reaches his conclusions. Additionally, the Court of Appeals for Lorain County reviewed the same type of "profiling" testimony involving this witness in

State v. Haynes *(Sept. 21, 1988), Lorain App. No. 4310, unreported, 1988 WL 99189.*[4]  *The court in* Haynes *stated:*

"Although Walter is a licensed psychologist, his testimony was not related to psychology, but to the field of criminal profiling.  * * * Walter testified that he had performed profiling services for investigatory purposes for police departments in several states, for the British and Australian governments, and for various agencies;  he also stated that the FBI uses profiles.  * * *

"Although this testimony may indicate that profiles may be a reliable investigative tool, there is little indication in the record that they can be said to be reliable for the purposes for which they were used by the state in the instant case. * * * "  *Haynes* at 7–8.

In *Haynes,* the witness testified on the distinction between a homophobic murder and an anger-retaliatory murder, and classified the murder as an anger-retaliatory murder in an attempt to discredit the defense.

The same is true in this case.  The witness testified that the crime scene was "disorganized," which indicates:

" * * * not preplanning, an impulsive kind of activity where many times rage, anger, intensity of emotion then overcomes and the satisfaction and the venting of that emotion then supersedes any attempt to overcome themselves, and that's what I found in this particular case."

The witness classified this case as fitting into an " * * * anger retaliatory type of motivational structure * * * " pattern.

■  Not only does the evidence need to be reliable in order to be admissible, it must also be helpful to the trier of fact.  If the subject of the testimony is within the understanding of the jury, the expert testimony is inadmissible.  *State v. Koss* (1990), 49 Ohio St.3d 213, 216, 551 N.E.2d 970, 972–974, citing *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881, paragraph three of the syllabus;  and *Lee v. Baldwin* (1987), 35 Ohio App.3d 47, 519 N.E.2d 662.  In every rape case, the jury is required to make the same "assessment" and determine all the relevant determinative facts, including whether the actions were violent and, if suggested by defendant, whether the sex was consensual.  The jury is perfectly capable of making the analysis and factual determinations

---

**4.**  During voir dire, this witness testified that he had testified in two cases in which he was qualified as an expert.  One of these was *Haynes,* which was reversed on appeal because of the admission of incompetent testimony by this witness.  The other case was *People v. Drake* (1987), 129 A.D.2d 963, 514 N.Y.S.2d 280.  In *Drake,* the witness testified that the circumstances of the case indicated a pathological condition known as "piquerism."  See *Haynes* at 8.

without opinion testimony. An expert is not needed where the jury can understand the issues and the evidence and make their own determination.

In this case, there is a distinct possibility of stereotyping the defendant. The witness testified only concerning the "typical" crime scene pattern and the "typical" violence associated with such a crime scene. The witness did not interview or evaluate the defendant or "profile" a specific person. He profiles " * * * for a type of person who would do a particular crime that has been assessed * * * [a]s a member of that group." This stereotyping of the defendant has several problems. First, the stereotype can prejudice the jury. Evid.R. 403(A) provides:

"Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

Even if this testimony could somehow meet the requirements of relevancy, it must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. This witness testified about only the generalities of the crime scene and made inferences about the violent behavior which is typical of similar scenes he had studied. The witness testified and described the events of the evening as an anger-retaliatory structure, which is:

" * * * [W]e find an unplanned assault, many times a homicidal overkill directed towards venting anger and revenge on the female victim.

"We find that often when these kinds of cases go down that they react to a scolding from a woman or a put-down or when they have been disciplined and they get in the rage through getting even, through retaliation, and through a certain sense of revenge and hostility.

"Again, we find the overreaction, we find that these types of perpetrators then get—have difficulty in their relationship with women, in the sense that they get nettled and—

" * * * *

"Then we find sort of a blitzkrieg attack, where, again, it's not planned out where you get that immediate impact and you blow hard in terms of your anger and so—though you hadn't necessarily planned on doing an assault—that you then have to use weapons of opportunity, such as your hands or a statue or— which can be used for bludgeoning or traumatization.

"We see then a fair amount of blunt force trauma, and then after the anger occurs, then sometimes we find where they will do postmortem mutilation and examine the bodies in those areas."

These generalities and typical facts rather than specific facts tend to place the defendant into a stereotype. In *State v. Thomas* (1981), 66 Ohio St.2d 518, 521, 20 O.O.3d 424, 427, 423 N.E.2d 137, 140, overruled in part by *Koss, supra,* the Ohio Supreme Court upheld the exclusion in that case of expert testimony about the "battered wife/woman syndrome" for four reasons.[5] One of which was a belief that the expert testimony " * * * tend to stereotype the defendant, causing the jury to become prejudiced. It could decide the facts based on typical, and not the actual, facts."

With respect to the battered wife/woman syndrome, the Supreme Court in *Koss* precludes expert testimony as to the syndrome unless the defendant establishes that she is a battered wife. Here, the so-called expert testimony of the profilist was admitted to prove defendant committed rape. It did not explain determinative conduct as does the expert testimony relating to the battered wife/woman syndrome but, instead, the profilist opines as to the occurrence of the determinative conduct.

A second problem with such testimony which stereotypes the defendant is that it violates Evid.R. 404(A)(1), which provides:

"(A) Character Evidence Generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions:

"(1) *Character of Accused.* Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same is admissible * * *."

This rule does not allow the prosecution to procure testimony about character traits of the defendant unless the defendant has first put his character in issue in the case. In this case, the witness discussed anger, revenge, hostility and difficulty in relationships with women, all in relation to the motivational structure in which he classified this case. This type of character evidence is inadmissible at least unless the defendant has first put his character at issue and probably not even then.

---

**5.** *Thomas, supra,* upheld the exclusion of expert testimony about the "battered wife/woman syndrome" because (1) it is irrelevant and immaterial to the issue of whether defendant acted in self-defense; (2) the subject of the expert testimony is within the understanding of the jury; (3) the "battered wife/woman syndrome" is not sufficiently developed, as a matter of commonly accepted scientific knowledge, to warrant testimony under the guise of expertise; and (4) its prejudicial impact outweighs its probative value. *Koss, supra,* overruled the third reason for the holding in *Thomas.* In *Koss,* the Supreme Court held that the "battered wife/woman syndrome" has gained substantial acceptance to warrant admissibility in evidence.

Another evidence rule which precludes the admission of this testimony is Evid.R. 703, which provides:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing."

This rule requires that the expert testify from facts or data which have been admitted into evidence or those perceived by the witness. The words "perceived by him" may be interpreted as having personal knowledge. In this case, the witness based his opinions on the crime scene photos, the police reports and the pathological report. When a direct opinion based solely on the police report was about to be given, the court instructed the jury " * * * not to accept or consider any opinion of this witness based on the police report in this case." [6] This instruction is a curative one and we assume the jury followed the instruction. However, to the extent any other opinions of this witness, such as how he determined in which classification these events belonged, were based on the police report, these opinions are inadmissible based upon Evid.R. 703, since the police reports were not admissible into evidence. Evid.R. 702 (definition of an "expert witness") and Evid.R. 703 together require a two-step process for the admission of expert testimony. See *State v. Minor* (1988), 47 Ohio App.3d 22, 546 N.E.2d 1343, wherein it is stated:

" * * * First, Evid.R. 702 requires that the *trial court* determine whether the witness is qualified to give an expert opinion. Evid.R. 104(A). * * * Second, Evid.R. 703 mandates that the expert testimony *to be offered at trial* be based on either the personal perception of the expert or upon facts in the record. Accordingly, to the extent that the expert applies to the facts in evidence a scientific principle, theory, calculation, measurement, or table—which have qualified the witness as an expert—such principle, theory, calculation, measurement, or table need not be in evidence if the predicate facts are in evidence. * * * " (Emphasis *sic.*)

These evidence rules require the expert to have perceived the facts or to have based the opinion on facts admitted into evidence. Since the police reports were not admitted into evidence and the witness did not prepare such reports, both testimony as to facts stated only in those reports and any opinions based upon

---

6. The defendant also argues that since the witness gave an opinion as to defendant's credibility based upon the police reports, this court should reverse. However, the trial court did give a curative instruction to the jury to disregard any opinions of this witness based upon the police reports.

such reports are inadmissible.[7]  Therefore, to the extent the opinions, such as the crime scene was disorganized, or defendant's conduct involved an anger-retaliatory type of motivational structure, or any other of the witness's opinions were based on the police reports, these opinions are inadmissible under Evid.R. 703.

Determining that the testimony was erroneously admitted is not sufficient for reversal.  Unless the error was prejudicial and affects substantial rights, the error is considered harmless and disregarded under Crim.R. 52(A), which provides, "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."  Therefore, unless this witness's testimony prejudiced the defendant, the admission of such testimony is harmless error and will be disregarded.

■ Without the witness's testimony, the evidence admitted is far short of being overwhelming of defendant's guilt.  It may be reasonable to find either that a rape did or did not occur that evening, but it is for the jury to decide which version of the events to believe.  The weight given to and the credibility of the witness are questions for the trier of fact to determine.  *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212.  There exists a reasonable possibility, actually probability, that the witness's testimony contributed to defendant's conviction, thereby prejudicing him.  This prejudice affected a substantial right and the error is not harmless.  Since admission of the opinion evidence was prejudicial error, defendant's first assignment of error is well taken.

■ By his second assignment of error, defendant contends that the trial court erred in overruling a defense motion to dismiss alleging that the defendant's statutory rights to a speedy trial were denied.  The prosecution argues that the defendant waived his right to a speedy trial when counsel agreed to a continuance.  R.C. 2945.71 provides in pertinent part:

"(C) A person against whom a charge of felony is pending:

" * * *

"(2) Shall be brought to trial within two hundred seventy days after his arrest.

" * * *

"(E) For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days.  * * * "

---

7.  Since the witness purported to base his opinion on his own "studies" rather than upon an accepted scientific basis, the opinion testimony is not admissible.

In arguments to the trial judge regarding the motion to dismiss, the following facts were discussed. The defendant was arrested on September 10, 1990.[8] Attorney Reinhart was appointed as defense counsel and the trial was set for November 26, 1990. Attorney Reinhart did not make an appearance in the record. The week before trial, the prosecutor contacted attorney Reinhart, who informed the prosecutor that attorney Shaw had taken over the case. However, no withdrawal was formally made and Shaw was in Florida. The prosecutor informed attorney Shaw's secretary that a continuance was necessary, since Shaw did not know about the trial and discovery had not been completed. Shaw consented over the phone to the prosecutor's signing his name to a continuance, but states that he did not consent to time being waived. Shaw argued that when he returned from Florida, he discovered that no entry had been journalized appointing him as defense counsel. On November 28, 1990, Shaw filed a demand for discovery. The trial was continued several more times as to which no issue is raised herein. On March 2, 1992, the trial commenced.

In arguing the motion to dismiss before the jury was impaneled, defense counsel contended that he did not know that he was the defendant's counsel because no entry had been entered reflecting the appointment. Eventually, a *nunc pro tunc* entry was journalized on March 13, 1992. Shaw argued that since no entry had been journalized appointing him as counsel, no continuance which he agreed to would be valid, since he was not the attorney of record.

Even if that were true, the prosecutor, defense counsel and the trial court had assumed Shaw was the attorney of record because he so acted. On November 28, 1990, by filing the demand for discovery, Shaw made an appearance on behalf of defendant as his attorney of record. Accordingly, as of November 28, 1990, Shaw was the attorney of record for defendant. The demand for discovery would necessarily delay the trial. Even assuming the first continuance was invalid, Shaw's demand for discovery required some continuance of the trial. R.C. 2945.73(B) requires that the defendant must be discharged if he has not been tried within the required time period, and he makes a proper motion at or prior to the commencement of trial. However, the time may be extended by R.C. 2945.72, which provides in pertinent part:

"The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:

" * * *

---

8. The transcript and bindover state the arrest date was September 10, 1990. However, on the plea form the arrest date was designated as September 6. Either date can be used and the disposition will not change, since the delay in trial occurred within the required ninety days of either date.

"(C) Any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law;

" * * *

"(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;

" * * *

"(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion."

In this case, the first continuance entry states it was made upon motion of both parties. Although the signature of defense counsel Shaw was by "telephone authorization," he has not contended this was unauthorized, but contends he did not know that speedy trial rights had been waived. The entry meets the initial requirements of R.C. 2945.72(C), since the defendant apparently was without counsel until Shaw acted on his behalf. There has been no contention that this was due to fault or lack of diligence by the court. The court had appointed defense counsel Reinhart and there is nothing in the record that Reinhart did anything other than contact Shaw. Under such circumstances, delay was necessary to give both sides adequate time to prepare. It also meets the requirements of R.C. 2945.72(H).

Additionally, the entry also meets the requirements of R.C. 2945.72(E). The defense counsel's demand for discovery is the equivalent of a motion on the defendant's behalf and necessarily delays the trial under the circumstances. R.C. 2945.72(E). All of these constitute delay which extend the required time for bringing defendant to trial.

Defendant also argues that Columbus v. Bonner (1981), 2 Ohio App.3d 34, 2 OBR 37, 440 N.E.2d 606, required the motion to dismiss to be granted. In Bonner, the trial court ordered counsel to be appointed, but neglected to implement such order by appointing and notifying counsel until the scheduled date of trial, at which time defense counsel was appointed. At the same time, the court ordered a continuance of the trial to give the newly appointed defense attorney time to prepare. This court ordered the trial court to dismiss the charge against the defendant, since the continuance was not a reasonable one under R.C. 2945.72(C) and (H), and therefore did not extend the time for trial and defendant's speedy trial rights were denied. The situation here is dissimilar. In the delayed appointment entry of Shaw, the trial court specifically found:

" * * * that originally it appointed Mr. Harry Reinhart of the Columbus Bar to represent the defendant in the above-styled matter. Unbeknownst to the Court, Mr. Reinhart declined to accept the Court's appointment in the case.

"Attorney E. Scott Shaw was informed by telephone that he had been appointed to the case and proceeded to represent the defendant at all relevant times thereafter without the Court having formally signed an entry appointing Mr. Shaw."

*Bonner* is distinguishable from the case at hand, since Shaw was aware of the withdrawal of the court-appointed attorney before the scheduled trial date (since attorney Reinhart had asked him to take the case), and Shaw agreed to the continuance. Thereafter, Shaw acted as attorney of record continuously until the trial. As of November 28, 1990 at the latest, Shaw became the attorney of record when he made an appearance by making the demand for discovery. Additionally, that discovery demand would have necessarily extended the time for trial to some degree. Shaw was counsel of record at all relevant times though the record was unclear as to whether he was retained or appointed. Court appointment is relevant here only for Shaw's payment for his services at public expense and does not detract from his de facto representation of defendant. Defendant's second assignment of error is not well taken, since his statutory right to a speedy trial was not denied.

By his third assignment of error, defendant contends that the trial court erred by entering a judgment of conviction which was not supported by sufficient credible evidence. Since we have sustained defendant's first assignment of error, defendant will receive a new trial. The issues raised by this third assignment of error are now moot, since a new jury will examine the evidence. App.R. 12 requires an appellate court to decide each assignment of error and give reasons in writing unless an assignment is made moot by a ruling on another assignment of error. Since the defendant is receiving a new trial based on our decision on the first assignment of error, the third assignment of error raises no issue that needs to be determined upon this appeal.

By his fourth assignment of error, defendant contends that the trial court erred by permitting the introduction of irrelevant and unfairly prejudicial testimony. This error involves testimony by the friend whose house the defendant and victim visited that evening. The friend testified that Yvonne was upset about the comments made involving sex and a French poodle. The Ohio Supreme Court stated in *State v. Hymore* (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 302, 224 N.E.2d 126, 130, that "[t]he trial court has broad discretion in the admission and exclusion of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere." As stated above, Evid.R. 401 provides that relevant evidence is any

evidence tending to make the existence of any consequential fact more or less probable than without the evidence, and Evid.R. 402 provides that all relevant evidence is admissible.

The comment about the poodle is not relevant in this case. There is no consequential fact which this evidence makes more or less probable. The prosecution argues that the activities of defendant and victim in the hours immediately preceding her death are relevant to determine whether or not a rape occurred. It is difficult to find a basis for the fact that the victim was angry in the hours before her death to be relevant as to whether a rape occurred, since prior anger directed at her paramour gives rise to no reasonable inference she did or did not consent. Even if anger be relevant, the cause of her anger is not relevant under the circumstances. The primary effect of the evidence is to cast the defendant in a bad light. Therefore, the evidence was prejudicial to him. Consequently, this evidence should not have been admitted over defense objection.

The other evidence which is complained of in the fourth assignment of error is a portion of the videotape of defendant's statement to the police which did not have the volume turned off or down so the jury could not hear. Before the trial began, in argument over a defense motion to suppress, both parties agreed that the volume should be turned down in order that the jury not hear an improper statement. The police had asked the defendant the improper question of whether he had ever been to prison or if he had a record. The defendant answered "no" and the police asked if he had ever been arrested. The defendant replied, "yes, I've been to jail." The prosecutor agreed that the statement was improper and agreed to turn the volume down. However, during trial, the volume was not turned down until after the question "[h]ave you ever had trouble with the police" had been asked. The complete statement involving this section of the videotape should have had the volume turned down in order that the jury could not hear it. The parties agreed that the jury be unable to hear the statement and it should have been excluded. Consequently, the fourth assignment of error is well taken.

By his fifth assignment of error, defendant contends that the trial court erred in refusing jury instructions which were requested in a timely manner by the defendant. The defendant requested that the words "beyond a reasonable doubt" be added to three places in the instructions. The trial court refused to do so. The trial judge is not required to use the requested instructions, as long as the substance of the request is included in the instructions which are given. The substance of the instructions is of decisive importance, not necessarily the exact words or form. *Behm v. Cincinnati, Dayton & Toledo Traction Co.* (1912), 86 Ohio St. 209, 211, 99 N.E. 383, 384; *Jenkins v. Clark* (1982), 7 Ohio App.3d 93,

100, 7 OBR 124, 131–132, 454 N.E.2d 541, 550. In this case, the defendant requested three additions to the charge which were:

"If, after a fair and impartial consideration of all the evidence, you are firmly convinced [beyond a reasonable doubt] of the truth of the charge, the state has proved its case beyond a reasonable doubt. If you are not firmly convinced of the truth of the charge [beyond a reasonable doubt], you must find the defendant not guilty.

" * * *

"The sufficiency of circumstantial evidence to prove a fact or to prove guilt [beyond a reasonable doubt] depends, among other things, on whether reason and common sense leads us from the facts proved by real or direct evidence to the facts sought to be proved."[9]

The first and second proposals ask the judge to add the words "beyond a reasonable doubt" to the definition of "reasonable doubt." The addition is redundant and misleading and the trial court was not required to add the language. If the proposal is not an accurate statement of the law, or is misleading as here, then the judge does not have to add the requested language. The third proposal is contained in substance in the instruction that was given by the trial judge. The trial court was not required to incorporate the exact language requested and the trial court did not err. Therefore, defendant's fifth assignment of error is not well taken.

For the foregoing reasons, the first and fourth assignments of error are sustained, the second and fifth assignments of error are overruled, the third assignment of error is moot, and the judgment of the Franklin County Court of Common Pleas is reversed. The cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

PETREE and DESHLER, JJ., concur.

---

9. The words contained in brackets are the proposals which were denied.