This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Susan E. Boom, as administrator of the estate of Helen Nutter, deceased, appeals the exclusion of evidence and verdict against her in the Summit County Court of Common Pleas. We affirm.
 I.
Helen Nutter was in her mid-seventies and had numerous illnesses including diabetes and atrial fibrillation. John P. Robinson, D.O., appellee, began treating her in 1993. One of the prescribed therapies was coumadin. Helen Nutter collapsed in her home on February 1, 1998. Fortunately, her daughter, Ms. Boom, was present and summoned another family member to help Helen Nutter to her couch. After attempting to reach Dr. Robinson, Mrs. Boom summoned an ambulance, which took Helen Nutter to Akron General Medical Center, appellee. On February 8, 1998, Helen Nutter died, having never been released from the hospital.
On March 4, 1999, Dr. Robinson entered into a Step I Consent Agreement with the State Medical Board of Ohio. In that Consent Agreement, he admitted "that he has a history of substance abuse dating back to at least January of 1996." Pursuant to the agreement "in lieu of formal proceedings based upon the violation of Sections 4731.22(B)(10) and (B)(26), Ohio Revised Code," Dr. Robinson agreed to obtain treatment and comply with certain other conditions as specified in the Consent Agreement. A violation of R.C. 4731.22(B)(26), as stated in the Consent Agreement, involves the "`impairment of ability to practice according to acceptable and prevailing standards of care because of habitual or excessive use or abuse of drugs, alcohol, or other substances that impair ability to practice." Dr. Robinson complied with the conditions set forth in the Step I Consent Agreement and, on September 3, 1999, entered into a Step II Consent Agreement whereby his license to practice osteopathic medicine and surgery was reinstated subject to certain conditions.
On July 30, 1999, Mrs. Boom, Helen Nutter's daughter and administrator of her estate, filed suit against Dr. Robinson, individually, John P. Robinson, D.O., Incorporated, and Akron General Medical Center alleging that negligent, reckless, and/or wanton conduct on the part of these parties tortiously caused the death of Helen Nutter. Specifically, the suit centered around Dr. Robinson's prescription of coumadin for Helen Nutter and his alleged failure to monitor her coumadin level. Mrs. Boom averred that Helen Nutter's death was caused by an extremely high coumadin level. Mrs. Boom voluntarily dismissed the action against Akron General Medical Center without prejudice pursuant to Civ.R. 41(A). The action proceeded against Dr. Robinson and John P. Robinson, D.O., Incorporated, (hereinafter collectively referred to as "Dr. Robinson"). Dr. Robinson, on August 14, 2000, filed a motion in limine seeking the exclusion from evidence of the two Consent Agreements that he entered into with the State Medical Board of Ohio. Dr. Robinson requested the trial court "preclude the Plaintiffs from mentioning, questioning, or making any inferences whatsoever about the Step I Consent Agreement and Step II Consent Agreement." Mrs. Boom responded in opposition to the motion in limine on August 28, 2000. The cause was tried to a jury, commencing on September 14, 2000. Mrs. Boom's trial counsel sought the admission of the Consent Agreements again at trial. The trial court granted Dr. Robinson's motion in limine and found the documents to be inadmissible upon proffer at trial. The jury returned its verdict on September 18, 2000, finding for Dr. Robinson. The trial court duly entered judgment on the jury's verdict in a judgment entry journalized on September 20, 2000. This appeal followed.
 II.
Mrs. Boom asserts two assignments of error. We will address them together to facilitate review.
 First Assignment of Error The trial court erred as a matter of law by granting Defendant's Motion in Limine and sustaining Defendant's objection prohibiting Plaintiff from introducing any direct testimony or evidence of Defendant's Step I Consent Agreement and Step II [Consent] Agreement with The State Medical Board of Ohio.
 Second Assignment of Error The trial court abused its discretion in prohibiting Plaintiff from eliciting testimony or direct evidence of the terms and conditions surrounding the surrender of Defendant's license to practice medicine in Ohio.
 Mrs. Boom avers that the trial court erred in excluding the Consent Agreements Dr. Robinson signed with the State Medical Board of Ohio and erred in prohibiting her from eliciting testimony and other evidence concerning the disciplinary actions taken by the State Medical Board of Ohio. We disagree.
"The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio StateMed. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
Except as otherwise provided, "[a]ll relevant evidence is admissible," whereas "[e]vidence which is not relevant is not admissible." Evid.R. 402. "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. However, "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).
First, Mrs. Boom argues that the statement, that Dr. Robinson's ability to practice according to the acceptable and prevailing standards of care was impaired by his drug addiction, contained in the Step I and Step II Consent Agreements, was admissible for purposes of impeachment and as an admission. However, we concur with the trial court that this statement was not an admission and was irrelevant. The statements which Mrs. Boom sought to admit are set forth in the two Consent Agreements in substantially identical language and are as follows, set forth in context:
BASIS FOR ACTION
 This CONSENT AGREEMENT is entered into on the basis of the following stipulations, admissions and understandings:
 A. THE STATE MEDICAL BOARD OF OHIO is empowered by Section 4731.22, Ohio Revised Code, to limit, revoke, suspend a certificate, refuse to register or reinstate an applicant, or reprimand or place on probation the holder of a certificate who is in violation of Section 4731.22(B)(10), Ohio Revised Code, "[c]ommission of an act which constitutes a felony in this state regardless of the jurisdiction in which the act was committed," and Section 4731.22(B)(26), Ohio Revised Code, "impairment of ability to practice according to acceptable and prevailing standards of care because of habitual or excessive use or abuse of drugs, alcohol, or other substances that impair ability to practice."
 B. THE STATE MEDICAL BOARD OF OHIO enters into this CONSENT AGREEMENT in lieu of formal proceedings based upon the violation of Sections 4731.22(B)(10) and (B)(26), Ohio Revised Code, as set forth in Paragraph (D) * * * and expressly reserves the right to institute formal proceedings based upon any other violations of Chapter 4731[,] of the Revised Code, whether occurring before or after the effective date of this Agreement.
 The statements which Mrs. Boom sought to admit are not the statements of Dr. Robinson. The statement "`impairment of ability to practice according to acceptable and prevailing standards of care'" refers to the State Medical Board of Ohio's power to impose certain sanctions if this standard is violated. In paragraph B above, the State Medical Board of Ohio is, in lieu of proceedings for a violation of the sections enumerated in paragraph A, agreeing to the Consent Agreement. The statements in paragraph A are not admissions by Dr. Robinson, and he is not being charged with violating that standard; rather, he is entering into a Consent Agreement in lieu of such charges. These statements express the obligations of the State Medical Board of Ohio under the basic terms of the Consent Agreement: Dr. Robinson consents to do certain things and the State Medical Board of Ohio declines to pursue more serious sanctions pursuant to the code sections enumerated in paragraph A in regard to the acts enumerated in the Consent Agreement at paragraph D. Hence, we conclude that this portion of the Consent Agreement is not an admission pursuant to Evid.R. 801(D)(2). Further, the statements are irrelevant because they merely represent the State Medical Board of Ohio's side of the Consent Agreement; hence, they do not "tend to make the existence of any consequential fact more or less probable[.]" State v. Roquemore (1993), 85 Ohio App.3d 448, 461-62.
Mrs. Boom's second and related argument is that the trial court erred in excluding Dr. Robinson's admissions in the Consent Agreement, namely, that he had a substance abuse problem dating back to January of 1996 and had a chemical dependency problem relating to the self-prescription of hydrocodone and codeine. These statements, set forth in the Consent Agreements, are admissions pursuant to Evid.R. 801(D)(2)(a), as they are the statements of a party-opponent in his individual capacity. Hence, these statements are not hearsay. However, to represent admissible evidence, the statements still must conform to the requirements of Evid.R. 401 and 403. See, generally, State v. Paxton (1995),110 Ohio App.3d 305, 318; Timken Co. v. Lindley (1985), 29 Ohio App.3d 181,187.
Dr. Robinson's admissions are problematic under both Evid.R. 401 and 403. In terms of relevance, Evid.R. 401 provides that, to be admissible evidence pursuant to Evid.R. 402, the evidence must tend to make the existence of a fact of consequence to the determination of the action more or less probable. Dr. Robinson's addiction to drugs may evidence that he was impaired, and hence, increase the likelihood that he fell below that applicable standard of care. However, there is no nexus between his drug abuse and his actions in treating Helen Nutter. The preceding theory of relevance is mere speculation, as Dr. Robinson may not have fallen below the applicable standard of care due to his drug use. Hence, we conclude that "this testimony is far too speculative to have any real probative value." Joyce-Couch v. DeSilva (1991),77 Ohio App.3d 278, 288.
Pursuant to Evid.R. 403(A), evidence must be excluded if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. As noted above, the probative value of this evidence, if existent at all, is minimal. Moreover, the danger of unfair prejudice is high. Were the jury to learn that Dr. Robinson was abusing drugs at the time of Helen Nutter's death, it might be more disposed to find a downward deviation from the applicable standard of care. Further, due to the societal mores concerning abuse of drugs and Dr. Robinson's role as a physician, the jury might be incited to find liability due to his drug abuse rather than his breach of the applicable duty of care.
 In order to establish her case of medical malpractice, the plaintiff must establish, by a preponderance of evidence, that the physician acted or failed to act in a manner that a physician or surgeon of ordinary skill, care and diligence would have under like or similar conditions or circumstances, and that such acts or failures to act were the direct and proximate cause of the injury complained of.
 Dean v. Akron Gen. Med. Ctr. (Dec. 22, 1999), Summit App. No. 18636, unreported, at 7. The issue herein is whether Dr. Robinson fell below the applicable standard of care in treating Helen Nutter, not whether he was impaired while treating her. The former issue is one of malpractice; the latter is an issue for the State Medical Board of Ohio. Accordingly, we conclude that the trial court did not abuse its discretion in excluding the evidence at issue herein as irrelevant and because its probative value was substantially outweighed by the danger of unfair prejudice.
 III.
Mrs. Boom's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ____________________________ WILLIAM G. BATCHELDER
BAIRD, J. WHITMORE, J. CONCUR.