DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Frank Wood, appeals the judgment of the Medina County Court of Common Pleas. We affirm.
 I. {¶ 2} This case arises from Appellant's convictions for rape and gross sexual imposition of two minor children, "S.L." and "K.S."
 {¶ 3} S.L. was adopted by Scott Sadowsky and Danielle Sadowsky when she was a toddler. The Sadowskys were married at the time of the adoption. S.L. is a biological relative of Scott Sadowsky. The Sadowskys also have a son whose custody they share. Ms. Sadowsky met Appellant in October 2003 when he came *Page 2 
to the Sadowsky's home to perform repair work. The two soon began an affair. In July of 2004, Ms. Sadowsky and her children moved in with Appellant. Shortly thereafter, Ms. Sadowsky became pregnant with Appellant's child.
 {¶ 4} On October 20, 2004, at approximately 5:15 a.m., Ms. Sadowsky awoke to find that Appellant was not in the bed with her. She looked for him downstairs but could not find him. When she walked back upstairs, Ms. Sadowsky called to Appellant by name. According to Ms. Sadowsky, she then observed Appellant exit S.L's bedroom. She immediately asked Appellant what he was doing in S.L.'s bedroom. Appellant told her "[l]et's talk about this in the morning[.]" Ms. Sadowsky was immediately suspicious of Appellant's behavior. The next morning, she packed up her belongings and she and the children moved out of Appellant's home.
 {¶ 5} Thereafter, Ms. Sadowsky repeatedly asked S.L. if Appellant had touched her in an inappropriate way when he was in her bedroom. S.L. repeatedly denied that anything had happened. However, on January 11, 2005, Ms. Sadowsky again asked S.L. if Appellant had done anything to her. S.L. broke down and told Ms. Sadowsky that Appellant had sexually abused her. The next day, Ms. Sadowsky took S.L. to the Montville Police Department where she was interviewed by a social worker.
 {¶ 6} K.S. is the daughter of Appellant's former wife, Robin Speelman (fka Robin Spencer). Ms. Speelman and Appellant were married on May 12, 2000 *Page 3 
and divorced at the end of January 2002. Ms. Speelman has three daughters. Appellant is not the father of any of Ms. Speelman's daughters. Ms. Speelman lived with Appellant from December of 1999 through March or April of 2001. K.S. is Ms. Speelman's eldest daughter. K.S. moved in with her mother and Appellant sometime in the fall of 2000. At the end of the summer of 2004, K.S. told her mother that Appellant had molested her. Ms. Speelman eventually disclosed K.S.'s sexual abuse after she heard that Appellant was under investigation for abusing another child.
 {¶ 7} On August 3, 2005, Appellant was indicted on one count of rape of a victim under age 10, in violation of R.C. 2907.02(A)(1)(b)(B), a felony of the first degree and one count of gross sexual imposition of a victim under age 13, in violation of R.C. 2907.05(A)(4), a felony of the third degree. Appellant pled not guilty. Appellant's case proceeded to trial before a jury. Appellant was convicted on both counts.
 {¶ 8} Appellant was sentenced to a term of life in prison for the rape conviction and three years incarceration for the gross sexual imposition conviction. The court ordered that the sentences be served consecutively. The court additionally found that Appellant was a sexual predator and a child victim predator. Appellant timely appealed his convictions, raising five assignments of error for our review. We have combined a few of Appellant's assigned errors to facilitate our review. *Page 4 
 II. ASSIGNMENT OF ERROR I "[APPELLANT'S] SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHERE: (1) DEFENSE COUNSEL HAD AN ETHICAL CONFLICT BASED UPON HIS PRIOR REPRESENTATION OF A KEY PROSECUTION WITNESS IN HER RECENT DIVORCE FROM ANOTHER STATE'S WITNESS, AND THEIR MINOR DAUGHTER WAS ALSO A KEY STATE'S WITNESS IN THE CASE; (2) THE CONFLICT WAS NOT DISCLOSED UNTIL AFTER THE COMMENCEMNET [SIC] OF TRIAL DURING CROSS-EXAMINATION OF THAT PREVIOUSLY-REPRESENTED WITNESS; (3) THE PREVIOUSLY-REPRESENTED WITNESS NEVER WAIVED HER ATTORNEY-CLIENT PRIVILEGE, AND (4) [APPELLANT] DID NOT AFFIRMATIVELY WAIVE HIS RIGHT TO BE REPRESENTED BY CONFLICT-FREE DEFENSE COUNSEL ON THE RECORD."
 ASSIGNMENT OF ERROR II "[APPELLANT'S] SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHERE THE TRIAL COURT FAILED TO INQUIRE INTO THE CONFLICT OF INTEREST ON THE PART OF DEFENSE COUNSEL AFTER THE CONFLICT WAS REVEALED EARLY IN TRIAL."
 {¶ 9} In Appellant's first and second assignments of error, he contends that his right to effective assistance of counsel was violated for several reasons including that (1) a conflict of interest existed as a result of his counsel's prior representation of a key prosecution witness, (2) the conflict was not disclosed until after the commencement of trial, (3) the former client did not waive her attorney-client privilege, (4) Appellant did not affirmatively waive his right to be *Page 5 
represented by conflict-free counsel on the record and (5) the trial court failed to inquire into the conflict of interest after it was revealed. Because Appellant has failed to demonstrate that he suffered prejudice, we find no merit in these contentions.
 {¶ 10} A criminal defendant is guaranteed a right to the effective assistance of counsel by the Sixth Amendment. See McMann v.Richardson (1970), 397 U.S. 759, 771, fn. 14. A two-step process is employed in determining whether the right to effective counsel has been violated.
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington (1984), 466 U.S. 668, 687.
 {¶ 11} "An appellate court may analyze the prejudice prong of theStrickland test alone if such analysis will dispose of a claim of ineffective assistance of counsel on the ground that the defendant did not suffer sufficient prejudice." State v. Kordeleski, 9th Dist. No. 02CA008046, 2003-Ohio-641, at ¶ 37, citing State v. Loza (1994),71 Ohio St.3d 61, 83. Accordingly, we will begin our analysis with a discussion of the prejudice prong of Strickland. In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have *Page 6 
been different." State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus.
 {¶ 12} Prejudice will be presumed in a Sixth Amendment claim if the defendant shows that (1) his counsel actively represented conflicting interests and (2) such conflict of interest adversely affected his counsel's performance. State v. Haberek (1988), 47 Ohio App.3d 35, 38;State v. Keith (1997), 79 Ohio St.3d 514, 535; Cuyler v. Sullivan
(1980), 446 U.S. 335, 348. "A reviewing court cannot presume that the mere possibility of a conflict of interest resulted in ineffective assistance of counsel." State v. Sanchez (May 4, 2000), 8th Dist. No. 76027, at *5. The appellant must demonstrate something more than a "possibility of a conflict of interest[.]" State v. Manross (1988),40 Ohio St.3d 180, 182.
 {¶ 13} In the present case, Appellant asserts that he was denied the effective assistance of counsel at trial due to his attorney's prior representation of Danielle Sadowsky, the mother of one of the victims in the case and a key witness in the trial.
 {¶ 14} The record reflects that Attorney Stanley's representation of Ms. Sadowsky in her recent divorce was not revealed until she testified on cross-examination. On cross-examination, Ms. Sadowsky revealed that Attorney Stanley had represented her in her divorce proceedings. Upon learning of this potential conflict, the State asserted that Ms. Sadowsky had to waive her attorney/client privilege before Attorney Stanley could participate in the case. *Page 7 
 {¶ 15} For the purposes of our analysis of Appellant's assignments of error, we accept Appellant's assertion that a conflict of interest existed. Nonetheless, Appellant's claims fail because he has not satisfied that second prong of the presumption of prejudice test, i.e. he has failed to demonstrate that his counsel's conflict of interest adversely affected his counsel's performance. See Haberek,47 Ohio App.3d at 38. The record reflects that Attorney Green, not Attorney Stanley, cross-examined Ms. Sadowsky. Appellant asserts that Attorney Stanley gained confidential information through his representation of Ms. Sadowsky that could have been used to prepare or assist Attorney Green, his co-counsel, in his cross-examination of Ms. Sadowsky, S.L., and/or Mr. Sadowsky. Appellant has failed to explain how such confidential information hindered his counsel's performance. The more logical inference is that such confidential information could have aided Appellant's case.
 {¶ 16} Moreover, Appellant acknowledges that Attorney Stanley "ceased to provide any active assistance of counsel at all to [Appellant]" after the trial court learned of the conflict. The conflict of interest could not have adversely affected Attorney Stanley's performance if he "ceased to provide any active assistance of counsel to [Appellant]" after this relationship was exposed.
 {¶ 17} The cases cited by Appellant in support of his contention that his counsel's prior representation of a key prosecution witness violated his Sixth Amendment right to effective assistance of counsel are distinguishable from the *Page 8 
within matter. None of the cases cited by Appellant involved a defendant who was represented by more than one attorney.[1] Rather, the cases cited by Appellant involved the defendant's sole counsel's conflict of interest. See Thomas v. State (Fla.App.2001), 785 So.2d 626 (finding that defense counsel's prior representation of a key prosecution witness deprived defendant of the right to counsel free of conflicts); Lee v.State (Fla.App. 1997), 690 So.2d 664 (finding that defendant did not voluntarily waive his right to counsel who was free of conflicts of interest where trial counsel failed to ascertain whether defendant knew of his right to obtain other court-appointed counsel and defendant was under mistaken impression that he would be forced to represent himself if his counsel was removed from his case), State v. Jenkins (1995), 257 Kan. 1074 (finding that defendant was adversely affected by his appointed counsel's conflict of interest where his counsel was concurrently representing a key prosecution witness on an unrelated charge), United States v. Martinez (C.A.5 1980), 630 F.2d 361 (finding that defendant did not receive effective assistance of counsel with regard to cross-examination of a witness whom the attorney had previously represented on charges related to the defendant's charges).
 {¶ 18} Although we find that Appellant has failed to establish that he suffered prejudice as a result of his counsel's conflict of interest, we still have *Page 9 
grave concerns about the behavior of Attorney Stanley in representing two clients with inherently conflicting interests and in failing to disclose such conflict to either the court or the State.
 {¶ 19} Appellant's first and second assignments of error are overruled.
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ABUSED ITS DISCRETION BY NOT DECLARING A MISTRIAL WHEN THE CONFLICT OF INTEREST ON THE PART OF DEFENSE COUNSEL WAS REVEALED EARLY IN THE TRIAL, OR, IN THE ALTERNATIVE, ACCEPTING DEFENSE COUNSEL'S OFFER TO WITHDRAW LEAVING CO-COUNSEL TO TRY THE CASE ALONE."
 {¶ 20} In his third assignment of error, Appellant contends that the trial court abused its discretion in failing to declare a mistrial when Attorney Stanley's conflict of interest was revealed by Ms. Sadowsky early in the trial. Appellant argues, in the alternative, that the trial court abused its discretion in failing to accept Attorney Stanely's offer to withdraw as co-counsel.
 {¶ 21} The record reflects that Appellant did not request a mistrial. Rather, the trial court considered sua sponte whether it needed to declare a mistrial. Appellant has forfeited this argument by failing to raise it in the trial court. State v. Hairston, 9th Dist. No. 05CA008768, 2006-Ohio-4925, at ¶ 9 (a forfeiture occurs where a party fails to assert a right or make an objection before the trial court in a timely fashion). Where a party has forfeited an objection by failing to *Page 10 
raise it, the objection may still be assigned as error on appeal if a showing of plain error is made. Hairston, supra, at ¶ 9, quotingState v. McKee (2001), 93 Ohio St.3d 292, 299, fn. 3 (Cook, J., dissenting); Crim.R. 52(B).
 {¶ 22} Our sister courts have applied the above-referenced doctrine where a defendant failed to timely request a mistrial in the trial court. See State v. Miller, 3d Dist. No. 3-03-26, 2004-Ohio-1947;State v. Miller (Mar. 18, 1996), 4th Dist. No. 94 CA 9; State v.Marchioni (Oct. 12, 1988), 1st Dist. Nos. C-870201, C-870284 and C-870285. In those instances, the courts have held that the defendant waived[2] (more specifically "forfeited") his right on appeal to assert that the trial court should have declared a mistrial. State v.Keaton (Dec. 5, 1986), 4th Dist. No. 85 CA 27, provides particular guidance. In Keaton, the Fourth District Court of Appeals explained that
 "It should additionally be noted that appellant failed to move for a mistrial * * *. A party who discovers he has been substantially prejudiced must make his objection and move for a mistrial as soon as he discovers the grounds for that motion, Yerrick v. East Ohio Gas Co. (1964), 119 Ohio App. 220, and unless such action is timely taken, any right to a mistrial will usually be waived. Markus, Trial Handbook for Ohio Lawyers (1982), Section 403; Zielinsky v. Cleveland R. Co. (App. 1928), 6 Ohio Law Abs. 636. The failure to request or object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise." Id. at fn. 3; Crim.R. 30(A); State v. Underwood (1983), 3 Ohio St.3d 12. *Page 11 
 {¶ 23} An exception to the forfeiture doctrine exists, however, if plain error is found. Etter, 134 Ohio App.3d at 492; Hairston, supra, at ¶ 9, quoting McKee, 91 Ohio St.3d at 299, fn. 3 (Cook, J., dissenting); Crim.R. 52(B). Plain error is defined as any error or defect that affects an individual's substantial rights, which is not brought to the attention of the trial court through an objection. Crim.R. 52(B). However, Appellant has neither argued plain error, nor has Appellant explained why we should delve into this issue for the first time on appeal. Accordingly, we decline to address this issue.
 {¶ 24} We also find no merit in Appellant's contention that the trial court abused its discretion in failing to accept Attorney Stanely's offer to withdraw as co-counsel. An abuse of discretion is more than an error of law or judgment, but instead implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
 {¶ 25} First and foremost, Appellant has failed to demonstrate that he suffered prejudice as a result of Attorney Stanley's conflict of interest. Secondly, as we pointed out in our disposition of Appellant's first and second assignments of error, Appellant acknowledges that Attorney Stanley "ceased to provide any active assistance of counsel at all to [Appellant]" after the trial court learned of the conflict. As such, the conflict of interest could not have adversely affected *Page 12 
Attorney Stanley's performance. In addition, as the trial court pointed out, any privileged information transmitted by Attorney Stanley would have been communicated before trial. Attorney Green told the trial court that he did not receive any privileged information from Attorney Stanley. Accordingly, we find that the trial court did not abuse its discretion in declining Attorney Stanley's offer to withdraw.
 {¶ 26} Appellant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV "THE TRIAL COURT ABUSED ITS DISCRETION BY EXCLUDING RELEVANT DEFENSE EXPERT TESTIMONY BY A LICENSED CLINICAL PSYCHOLOGIST WHO EXAMINED [APPELLANT], CONDUCTED NUMEROUS TESTS ON [APPELLANT], AND PREPARED A WRITTEN REPORT OF HIS FINDINGS AND CONCLUSIONS THAT [APPELLANT] DID NOT MEET THE DIAGNOSTIC CRITERIA FOR PEDOPHILIA."
 {¶ 27} In his fourth assignment of error, Appellant contends that the trial court abused its discretion by excluding relevant defense expert testimony by a licensed clinical psychologist who examined Appellant, conducted numerous tests on Appellant and prepared a written report of his findings and conclusions that Appellant did not meet the diagnostic criteria for pedophilia. We disagree.
 {¶ 28} A trial court possesses broad discretion with respect to the admission of evidence. State v. Maurer (1984), 15 Ohio St.3d 239, 265. An appellate court will not disturb evidentiary rulings absent an abuse of discretion. State v. Roberts, 156 Ohio App.3d 352, 2004-Ohio-962, at ¶ 14. *Page 13 
 {¶ 29} Appellant has cited no authority in support of his contention that the trial court abused its discretion in excluding Dr. Reed's testimony. See App.R. 16(A)(7). Moreover, our sister courts have held that evidence that a defendant is "typical" of a classification is inadmissible. State v. Smith (1992), 84 Ohio App.3d 647, 657, quotingState v. Thomas (1981), 66 Ohio St.2d 518, 521, overruled in part byState v. Koss (1990), 49 Ohio St.3d 213. Such "typical facts tend to place the defendant into a stereotype." State v. Roquemore (1993),85 Ohio App.3d 448, 456. A jury could then make a determination based on typical facts and not the actual facts. Id., quoting Thomas,66 Ohio St.2d at 521.
 {¶ 30} In Roquemore, the Tenth District Court of Appeals explained the interplay between the Supreme Court's holdings in Thomas andKoss. The Tenth District explained that:
 "Thomas, supra, upheld the exclusion of expert testimony about the `battered wife/woman syndrome' because (1) it is irrelevant and immaterial to the issue of whether defendant acted in self-defense; (2) the subject of the expert testimony is within the understanding of the jury; (3) the `battered wife/woman syndrome' is not sufficiently developed, as a matter of commonly accepted scientific knowledge, to warrant testimony under the guise of expertise; and (4) its prejudicial impact outweighs its probative value. Koss, supra, overruled the third reason for the holding in Thomas. In Koss, the Supreme Court held that the `battered wife/woman syndrome' has gained substantial acceptance to warrant admissibility in evidence." Id. at 456, fn. 5.
 {¶ 31} Pursuant to Roquemore, Smith, and Thomas, such test results may not be introduced to demonstrate that a defendant is not likely to be a pedophile. The trial court was charged with determining whether Appellant committed the *Page 14 
charged offenses, not whether he was theoretically likely to commit such offenses. Accordingly, we find no abuse of discretion in the trial court's exclusion of certain portions of Dr. Reed's purported testimony. Appellant's fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR V "THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE JURY'S VERDICTS, AND [APPELLANT'S] CONVICTIONS OF RAPE AND GROSS SEXUAL IMPOSITION WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 32} In Appellant's fifth assignment of error, he contends that there was insufficient evidence to support the jury's verdicts and that Appellant's convictions for rape and gross sexual imposition were against the manifest weight of the evidence. We disagree.
 {¶ 33} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id.
 {¶ 34} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge *Page 15 
questions whether the state has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing State v.Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). Further,
 "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
Therefore, we will address Appellant's claim that his conviction was against the manifest weight of the evidence first, as it is dispositive of Appellant's claim of insufficiency.
 {¶ 35} When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 36} Appellant was convicted of one count of rape of S.L., a victim under age 10, in violation of R.C. 2907.02(A)(1)(b)(B) and one count of gross sexual imposition of a victim under age 13, in violation of R.C.2907.05(A)(4). *Page 16 
 {¶ 37} We will first examine Appellant's challenge to his rape conviction. The version of R.C. 2907.02 in effect at the relevant time provided, in pertinent part:
 "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
 "* * *
 "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
 "* * *
 "* * *
 "(B) * * * If the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force or if the victim under division (A)(1)(b) of this section is less than ten years of age, whoever violates division (A)(1)(b) of this section shall be imprisoned for life. If the offender * * * during or immediately after the commission of the offense caused serious physical harm to the victim, whoever violates division (A)(1)(b) of this section shall be imprisoned for life or life without parole."
R.C. 2907.01(A) defines "sexual conduct" as
 "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
 {¶ 38} Danielle Sadowsky testified for the State. Ms. Sadowsky testified that, on October 20, 2004, at approximately 5:15 a.m., she observed Appellant leaving S.L.'s bedroom. Ms. Sadowky became immediately suspicious of his *Page 17 
behavior because he was wearing only a t-shirt, underwear and socks. Ms. Sadowsky testified that the only time she observed Appellant walking around the house in his underwear was when she saw him walk out of S.L.'s room in the middle of the night.
 {¶ 39} Ms. Sadowsky testified that she asked Appellant what he was doing in S.L.'s bedroom and that he said "[l]et's talk about this in the morning[.]" Ms. Sadowsky testified that Appellant told her "he had fallen asleep in there because [S.L.] had gotten up and he heard her tossing and turning and thought she was having a bad dream and he wanted to comfort her." Ms. Sadowsky and her children moved out the next morning.
 {¶ 40} Thereafter, Ms. Sadowsky repeatedly asked S.L. if Appellant had touched her in an inappropriate way when he was in her bedroom. S.L. repeatedly denied that anything had happened. However, on January 11, 2005, Ms. Sadowsky again asked S.L. if there was "anything * * * [she] want[ed] to tell [her] Mommy about what happened when we lived with [Appellant]?" S.L. cried as she explained what Appellant did to her. The next day, Ms. Sadowsky took S.L. to the Montville Police Department where she was interviewed by a social worker. She also took S.L. to Akron Children's Hospital for an examination.
 {¶ 41} Ms. Sadowsky testified that S.L. consistently recounted the details of her encounters with Appellant. S.L. consistently stated that Appellant sexually *Page 18 
assaulted her every night that she stayed at his house. S.L. was interviewed by a nurse and a social worker at Akron Children's Hospital.
 {¶ 42} S.L. also testified. S.L. was eleven years old at the time of trial. S.L. testified that Appellant touched her. She explained that, on more than one occasion, Appellant "got on top of [her]" in her bed during the night. She elaborated, explaining that he "touched" her "[o]n [her] private." She stated that Appellant touched her with "[h]is hand or sometimes his private." S.L. also acknowledged that Appellant placed his hands or his private inside her privates.
 {¶ 43} S.L. testified that Appellant told her "[d]on't tell anyone." S.L. also identified Appellant as the perpetrator. S.L. testified that Appellant showed her pictures on his laptop computer of "[n]aked people * * * touching each other." She explained that this happened "[a]bout ten" times and that while he showed her the pictures, "he had his hands in his pants." She testified that she knew Appellant had obtained the images from the internet because she recalled seeing "Yahoo" next to the image. She explained that this happened when she would go to the basement to ask Appellant for help with her homework. She testified that Appellant told her not to tell anyone about the pictures.
 {¶ 44} Donna Abbott, a nurse practitioner at Akron Children's Hospital, also testified for the State. Ms. Abbott explained that she evaluated S.L. regarding the allegations of sexual abuse. She testified that S.L. exhibited no signs of physical trauma. However, Ms. Abbott concluded that S.L. had been a victim of *Page 19 
sexual abuse. She explained that "there can be sexual abuse without any physical findings because there either weren't any injuries done at all or there were some minor injuries that have healed by the time the exam is done."
 {¶ 45} Elizabeth Morstatter, a social worker employed by Akron Children's Hospital testified on behalf of the State regarding her interview of S.L. Ms. Morstatter recounted S.L.'s description of the abuse. Ms. Morstatter's testimony mirrored S.L.'s testimony. She testified that S.L. told her Appellant would come into her bedroom at night and "rub up against her with his private part." She also testified that S.L. told her that Appellant had shown her lewd pictures on the computer.
 {¶ 46} Nick Stolph also testified for the State. Mr. Stolph testified that he worked for Appellant in his construction business for four or five years (from 1999/2000 to 2005). He explained that in February of 2005, he was working for Appellant in Cleveland. While at the job site in Cleveland, Appellant asked Mr. Stolph to "take a walk[.]" Mr. Stolph testified that he "looked back and [Appellant] was — he had what appeared to be a computer. He was hitting it with a sledgehammer, basically destroying it in a million little pieces." Mr. Stolph explained that Appellant then "picked it up and threw it * * * away * * * on the job site dumpsters." *Page 20 
 {¶ 47} Appellant was also convicted of gross sexual imposition of K.S., a victim under age 13, in violation of R.C. 2907.05(A)(4). R.C.2907.05(A)(4) provides:
 "No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 "* * *
 "The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."
R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
 {¶ 48} Robin Speelman testified on behalf of the State regarding the gross sexual imposition charge. Ms. Speelman is Appellant's former wife. Ms. Speelman and Appellant were married on May 12, 2000 and divorced at the end of January 2002. Ms. Speelman has three daughters. Appellant is not the father of any of Ms. Speelman's children. Ms. Speelman lived with Appellant from December of 1999 through March or April of 2001. Ms. Speelman gave birth to her third daughter in August of 2000. Ms. Speelman's eldest daughter, K.S. moved in with her and Appellant sometime in the fall of 2000. When Ms. Speelman and Appellant divorced, she and her daughters moved out. *Page 21 
 {¶ 49} At the end of the summer of 2004, Ms. Speelman's eldest daughter, K.S. told her that Appellant has molested her. Ms. Speelman testified that when K.S. told her about the molestation, she was upset and was crying and shaking. K.S. told her mom that Appellant had "touched her." Ms. Speelman testified that she did not take immediate action because she and her daughter were grieving over the loss of Ms. Speelman's father. She also stated that she did not react because "[w]e were moving on with our life. We were at a place where things were just starting to move in a very right and a very good direction for us."
 {¶ 50} Ms. Speelman decided to disclose her daughter's molestation after she heard that Appellant was under investigation for abusing another child. Ms. Speelman took K.S. to Children's Services to get professional help. Ms. Speelman said that she "didn't want to go after [Appellant]."
 {¶ 51} K.S. also testified. K.S. was ten years old at the time of trial. K.S. testified that she did not remember a time when she and Appellant were together upstairs in his house in Chippewa Lake. K.S. identified Appellant as the man that was married to her mother. K.S. also agreed that she had met with Dr. Suzanne LeSure and that she had talked with Dr. LeSure about Appellant. She also agreed that she told Dr. LeSure the truth about what Appellant had done to her. The record reflects that K.S. was frightened by the experience of testifying and was, therefore, unable to further testify. *Page 22 
 {¶ 52} Dr. Suzanne LeSure, a licensed psychologist, also testified. Dr. LeSure treated both S.L. and K.S. for their sexual abuse. Dr. LeSure testified that S.L. told her about Appellant's sexual abuse. According to Dr. LeSure, S.L. told her that "`[Appellant started by showing me pictures on the computer * * * [o]f naked people.'" S.L. proceeded to describe the sexual abuse. S.L. told Dr. LeSure that Appellant once said to her "`I love you as much as your mom. This is how you're going to have a baby when you're an adult. Don't tell you mom.'" S.L. also told Dr. LeSure that
 "`[Appellant] lied to my mom. He would tell her he was tucking me in or giving me medicine or reading me a story. I told my mom every morning that he was a liar. I figured out that whatever he did was bad or he wouldn't have lied. He'd tell my mom that he was doing work, but he was just staring at pictures. It was strange.'"
 {¶ 53} Dr. LeSure testified that K.S. also told her about Appellant's sexual abuse. Dr. LeSure testified that K.S. responded to her inquiries about the sexual abuse with "extreme anxiety." K.S. told Dr. LeSure that Appellant abused her "`[l]ike every night.'" She told Dr. LeSure that Appellant would "put his mouth on her private, his hand on her private, and his private on her private." She also told Dr. LeSure that Appellant told her not to "`tell anyone.'"
 {¶ 54} Medina Police Department Detective Mark Kollar also testified for the State. Detective Kollar testified that he investigated K.S.'s allegations of sexual abuse. As part of that investigation, he searched Appellant's Medina Township home. During the search, Detective Kollar discovered a locked *Page 23 
briefcase which "contained numerous files and documents as well as photographs of young children." Detective Kollar testified that a majority of the pictures were of "[y]oung females." Detective Kollar estimated that the young girls ranged in age from "four or five up to probably eleven, twelve." K.S. was one of the individuals in the photographs.
 {¶ 55} Appellant did not testify. Appellant attempted to present one witness, Dr. Reed, to testify on his behalf. However, the trial court limited the scope of Dr. Reed's testimony. As a result, Appellant did not call Dr. Reed to testify.
 {¶ 56} Upon review of the evidence, we find that Appellant's conviction for rape of a victim under age 10 is supported by the manifest weight of the evidence. The State presented ample testimony to establish the elements of R.C. 2907.02(A)(1)(b)(B), rape of a victim under the age of 10. The State presented evidence that Appellant repeatedly engaged in sexual conduct with S.L., who was not his spouse, and who was under the age of ten at the time of the abuse. Further, the State set forth evidence that Appellant purposely compelled S.L. by force. S.L. testified that Appellant would come into her bedroom at night and lay on top of her when he sexually abused her. In addition, Appellant told S.L. not to tell anyone.
 {¶ 57} We similarly find that Appellant's conviction of gross sexual imposition of a victim under age 13 is supported by the manifest weight of the *Page 24 
evidence. Although K.S. was unable to testify regarding Appellant's abuse because she was too frightened to testify at trial, the State presented several other witnesses that related the story of abuse she had recounted to them. We find that the State presented ample evidence to establish the elements of R.C. 2907.05(A)(4). The State set forth testimony from K.S.'s mother, Robin Speelman, and Dr. LeSure that Appellant had sexual contact with K.S., who was not his spouse and who was less than thirteen years old at the time of the sexual contact.
 {¶ 58} In this case, the jury heard testimony from several witnesses regarding Appellant's sexual abuse of S.L. and K.S. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, at paragraph one of the syllabus. The trier of fact is in the best position to judge the credibility of the witnesses. In this case the jury believed the witnesses' testimony.
 {¶ 59} As this Court has disposed of Appellant's challenges to the weight of the evidence, we similarly dispose of his challenge to its sufficiency. Roberts, supra, at *2. Necessarily included in this Court's determination that the jury verdict was not against the manifest weight of the evidence, is a determination that the evidence was also sufficient to support the convictions. Id. Accordingly, Appellant's fifth assignment of error is overruled.
 III. *Page 25 {¶ 60} Appellant's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
 Costs taxed to Appellant. *Page 26 
SLABY, P. J. CARR, J. CONCUR
[1] The record reflects that when the conflict first arose, Attorney Stanley informed the trial court that he was "second chair" and that he was "not doing the trial."
[2] We are mindful that this Court as well as our sister courts have frequently interchanged these terms. See Hairston, supra, at ¶ 9, quoting United States v. Olano (1993), 507 U.S. 725, 733. *Page 1